**OUTTEN & GOLDEN LLP**
Gary Phelan (GP 0500)
Tammy Marzigliano (TM 2934)
Ossai Miazad (OM 1127)
Attorneys for Plaintiff
3 Park Avenue, 29th Floor
New York, NY 10016
(212) 245-1000
Fax: (212) 977-4005

RECEIVED
09 OCT -6 PM 5:43
U.S. DISTRICT COURT
S.D.N.Y.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KIKI PARIS,

        Plaintiff,

-against-

MARTHA STEWART LIVING
OMNIMEDIA, INC.; BODY & SOUL
OMNIMEDIA, INC.;
MARTHA STEWART, individually

        Defendants.

---

**COMPLAINT**   09-CIV-8506

**JURY TRIAL DEMANDED**

Plaintiff, by and through her attorneys, Outten & Golden LLP, alleges and states as follows:

PRELIMINARY STATEMENT

1. The plaintiff, Kiki Paris, brings this action against defendants Martha Stewart Living Omnimedia, Inc. ("Martha Stewart Living"), Body & Soul Omnimedia, Inc. ("Body & Soul") (together with Martha Stewart Living, "MSLO"), and Martha Stewart in her individual capacity (together with MSLO, the "Defendants") for violations of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12203 et seq.; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 12201 et seq.; the New York State Human Rights Law, New York

Executive Law ("NYSHRL") §§ 290 *et seq.*; the New York City Human Rights Law, New York City Administrative Code ("NYCHRL") §§ 8-101 *et seq.*; the Family and Medical Leave Act ("FMLA") 29 U.S.C. §§ 2601 *et seq.*, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140.

    2. MSLO hired Ms. Paris in October 2005 to attract major brand advertising for Body & Soul Magazine. Through her experience and hard work she rapidly increased Body & Soul's reputation amongst the major brand advertisers, generating millions of dollars in revenue for the Company. On May 11, 2008, two and a half years into her employment with MSLO, Ms. Paris was struck by a car while she was crossing the street and sustained substantial injuries. She immediately requested leave from MSLO so that she could recover. Although, Ms. Paris was suffering from debilitating pain and her mobility was severely limited by a seven-pound metal "halo" affixed to her skull, MSLO insisted that she perform work at home while she was on leave, including answering phone calls and emails and speaking to advertisers. Only a month after her surgery, Ms. Paris's boss Donna Merritt began pressuring her to get off of leave and return to work. Fearing that she would lose her job, Ms. Paris complied and began working from home on July 14, 2008. She worked six to eight hours a day under extreme physical and emotional strain. On August 4, 2008, less than three weeks after she was forced off of leave, MSLO fired her.

## JURISDICTION AND VENUE

    3. This court has jurisdiction pursuant to 29 U.S.C. § 2617 and 28 U.S.C. §§ 1331 and 1343. This court has supplemental jurisdiction over plaintiff's related claims arising under state and local laws pursuant to 28 U.S.C. § 1367(a).

4. Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(b) as this action arose, in substantial part, within the Southern District of New York, where the unlawful employment practices alleged herein occurred and many of the records pertinent thereto are maintained.

## CONDITIONS PRECEDENT

5. The plaintiff timely filed charges of disability and age discrimination with the Equal Employment Opportunity Commission ("EEOC").

6. On or about July 7, 2009, the EEOC issued Ms. Paris a Notice of Right to Sue. This complaint has been filed within 90 days of the receipt of that notice. Ms. Paris has fully complied with all prerequisites to jurisdiction in this Court under the ADA, ADEA, FMLA, and ERISA.

7. Contemporaneously with the filing of this Complaint, Ms. Paris has mailed a copy to the New York City Commission of Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of Section 8-502 of the New York City Administrative Code.

## PARTIES

8. Plaintiff Kiki Paris is an individual who currently resides in Manhattan in the State of New York. She is fifty-three years old and was an individual with a "disability" within the meaning of the ADA, the NYSHRL, and the NYCHRL, and, until her termination, was an "employee," as defined by the relevant statutes.

9. Defendant Martha Stewart Living is a Delaware corporation with corporate headquarters located in New York City. Martha Stewart Living maintains offices and does

business in New York City. Martha Stewart Living is an "employer" as defined by Title I of the ADA, the ADEA, the NYSHRL, the NYCHRL, the FMLA and ERISA.

10. Defendant Body & Soul is a Delaware corporation with corporate headquarters located in New York City. Body & Soul maintains offices and does business in New York City. Body & Soul is an "employer" as defined by Title I of the ADA, the ADEA, the NYSHRL, the NYCHRL, the FMLA and ERISA.

11. Defendant Martha Stewart is an individual who currently resides in the State of New York. Ms. Stewart is President, Founder and majority owner of the common stock of MSLO and as such individually liable under the NYSHRL.

## FACTUAL ALLEGATIONS

12. Ms. Paris began working for MSLO in October 2005 as New York Manager of Body & Soul Magazine.

13. When MSLO hired Ms. Paris, Body & Soul Magazine had few national brand advertisers. MSLO hired Ms. Paris to attract and secure major national brand advertisement for Body & Soul Magazine.

14. Accomplishing this required her to create visibility for Body & Soul Magazine on "Madison Avenue," the epicenter of the advertising community in the United States.

15. Ms. Paris developed a successful sales strategy and sales materials that MSLO used nationally. By 2007, MSLO recognized Ms. Paris for producing the most growth in a territory year over year in terms of both number of pages sold (+249%) and revenue (+303%) and for gaining the most new national accounts.

16. In two and a half years, Ms. Paris generated over $2.5 million in revenue for MSLO, securing over 50 major national advertisers including Arm & Hammer, Prudential,

Johnson & Johnson, L'Oreal, Vaseline Intensive Care and numerous brands owned by Kraft and Nestle.

17. MSLO recognized Ms. Paris's accomplishments with stellar performance evaluations, accolades and a promotion to Senior Director of National Accounts in or about March 2008.

18. In the words of Donna Merritt, Ms. Paris's own supervisor, "her efforts over the past year have completely changed the advertising make up of our publication and the way we are perceived by Madison Ave."

19. On May 11, 2008, while crossing the street, Ms. Paris was hit by a car. She sustained severe injuries including multiple fractures to the C2 vertebra in her spine and traumatic injury to her left elbow.

20. Ms. Paris informed MSLO that due to the severity of the injuries she had sustained from the accident, she required a leave of absence from work.

21. On May 15, 2008, Ms. Paris underwent surgery. She remained hospitalized from May 15, 2008 to May 19, 2008.

22. After the surgery, Ms. Paris was unable to move her neck or her head because of a seven-pound metal halo that was screwed to her skull and connected to a hard plastic body vest that she wore. She could not bend or lift anything, shower or sleep for more than three to four hours a day. Ms. Paris's vision was also blurred after the accident.

23. Due to the injuries to her elbow and vertebra, Ms. Paris could not speak on the phone or work on her computer without experiencing severe pain. She also could not move her neck or her head making it difficult for her to work on a computer or her blackberry.

24. While Ms. Paris was on short term disability and FMLA-covered leave, Ms. Paris's supervisors Donna Merritt and Janesse Bruce immediately began pressuring Ms. Paris to work from home. On a daily basis, she received emails and phone calls to which she was required to respond. Because of her blurred vision and inability to raise her left arm or to rotate her head or neck, Ms. Paris had to largely rely on her right arm to lift her blackberry to her face, which caused her substantial physical and emotional strain. Ms. Merritt and Ms. Bruce also both asked Ms. Paris to call advertisers on numerous occasions and repeatedly suggested that she call her contacts to tell them about her accident and try to secure "sympathy" pages.

25. Ms. Paris repeatedly reminded Ms. Merritt and Ms. Bruce that she was on leave for her medical condition. MSLO was aware of Ms. Paris's physical condition and limitations not only because she had told them, but also because Ms. Merritt went to see her at her home on at least two occasions.

26. Within a month of her surgery, and while she was still confined to the "halo," Ms. Merritt began pressuring Ms. Paris to return from her short-term disability and FMLA-covered leave and to resume work. Fearing that she would lose her job, Ms. Paris complied and began working from home on July 14, 2008.

27. Ms. Merritt immediately began pressuring Ms. Paris to sell "pages" and giving her projects that required her to sit for hours at her computer. Ms. Paris worked six to eight hours a day under extreme physical and emotional strain, slowing her recovery and exacerbating her condition.

28. On August 4, 2008, less than three weeks after she was forced off of her disability and FMLA-covered leave, Ms. Bruce and Tina Mohyla, a benefits manager from MSLO's

human resources office, visited Ms. Paris's home and handed her a letter informing her that MSLO was firing her.

29. Ms. Paris's job was given to Donna Lindskog, a MSLO salesperson who is at least twelve years younger than Ms. Paris, has less experience in sales than Ms. Paris and had been with the magazine for less than a year.

30. MSLO did not engage in a good faith interactive process. Instead, they forced Ms. Paris to work while she was on disability and FMLA-covered leave, demanded that she increase her hours of work from home, forced her off disability and FMLA-covered leave and soon thereafter terminated her employment.

31. Ms. Paris was an "individual with a disability," as defined by the ADA, because she was substantially limited in her ability to perform major life activities including, but not limited to, working, reading, performing manual tasks, bending, lifting, cooking, bathing, sleeping and dressing herself.

32. MSLO regarded Ms. Paris as disabled in that it regarded her as substantially limited in her ability to perform major life activities.

33. Ms. Paris's injuries constituted a "serious health condition," as defined by the FMLA, because they required inpatient care and continuing treatment by a health care provider and incapacitated her from performing the essential functions of her job.

## FIRST COUNT

### Failure to Reasonably Accommodate in Violation of the
### Americans with Disabilities Act
### 42 U.S.C. §§ 12203 *et seq.*

34. Ms. Paris incorporates the preceding paragraphs by reference.

35. Ms. Paris's medical conditions as described in this Complaint constituted a disability within the meaning of the ADA. 42 U.S.C. § 12101(2).

36. The ADA prohibits discrimination based on disability and defines discrimination as including a failure to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified [employee] with a disability." 42 U.S.C. §§ 12112(a), 12112 (b)(5).

37. MSLO violated Title I of the Americans with Disabilities Act by failing to accommodate Ms. Paris's known physical limitations brought on by her disability.

38. Ms. Paris suffered damages as a result of MSLO's unlawful acts, including past and future lost wages and benefits, past and future physical and emotional distress, and the costs of bringing this action.

## SECOND COUNT

### Discriminatory Termination Based on Disability in Violation of the
### Americans with Disabilities Act
### 42 U.S.C. §§ 12203 *et seq.*

39. Ms. Paris incorporates the preceding paragraphs by reference.

40. Ms. Paris's medical conditions as described in this Complaint constituted a disability within the meaning of the ADA. 42 U.S.C. §12101(2).

41. MSLO violated Title I of the Americans with Disabilities Act when it discriminatorily terminated Ms. Paris's employment because of her known disability. 42 U.S.C. 12112(a).

42. Ms. Paris suffered damages as a result of MSLO's unlawful acts, including past and future lost wages and benefits, past and future physical and emotional distress, and the costs of bringing this action.

### THIRD COUNT

### Discriminatory Termination Based on Perceived Disability in Violation of the Americans with Disabilities Act
### 42 U.S.C. §§ 12203 *et seq.*

43. Ms. Paris incorporates the preceding paragraphs by reference.

44. MSLO regarded Ms. Paris as suffering from a physical impairment that substantially limits one or more major life activities.

45. MSLO violated the Americans with Disabilities Act when it discriminatorily terminated Ms. Paris's employment because it regarded her as having a disability. 42 U.S.C. §§ 12101(2) and 12112(a).

46. MSLO violated the Americans with Disabilities Act when it refused to provide Ms. Paris a reasonable accommodation despite its perception that she was an "individual with a disability."

47. Ms. Paris suffered damages as a result of MSLO's unlawful acts, including past and future lost wages and benefits, past and future physical and emotional distress, and the costs of bringing this action.

## FOURTH COUNT

### Failure to Reasonably Accommodate in Violation of the
### New York State Human Rights Law
### N.Y. Exec. L. § 296

48. Ms. Paris incorporates the preceding paragraphs by reference.

49. Ms. Paris's medical conditions as described in this Complaint constitute a disability within the meaning of the New York State Human Rights Law, N.Y. Exec. L. § 292(21).

50. The New York State Human Rights Law provides, "it shall be an unlawful discriminatory practice for an employer ... to refuse to provide reasonable accommodations to the known disabilities of an employee." N.Y. Exec. L. § 296(3)(a).

51. Martha Stewart is a majority owner of the common stock of MSLO and is therefore subject to individual liability under the New York State Human Rights Law.

52. Defendants violated the New York State Human Rights Law, N.Y. Exec. L. § 296, by failing to accommodate Ms. Paris's known disability.

53. Ms. Paris suffered damages as a result of Defendants' unlawful acts, including past and future lost wages and benefits, and past and future physical and emotional distress.

## FIFTH COUNT

### Discriminatory Termination Based on Disability in Violation of the
### New York State Human Rights Law
### N.Y. Exec. L. § 296

54. Ms. Paris incorporates the preceding paragraphs by reference.

55. Ms. Paris's medical conditions as described in this Complaint constituted a disability within the meaning of the New York State Human Rights Law. N.Y. Exec. L. § 292(21).

56. Martha Stewart is a majority owner of the common stock of MSLO and is therefore subject to individual liability under the New York State Human Rights Law.

57. Defendants violated the New York State Human Rights Law when it terminated Ms. Paris's employment because of her known disability. N.Y. Exec. L. § 296.

58. Ms. Paris suffered damages as a result of Defendants' unlawful acts, including past and future lost wages and benefits, and past and future physical and emotional distress.

### SIXTH COUNT

**Discriminatory Termination Based on Perceived Disability in Violation of the New York State Human Rights Law
N.Y. Exec. L. § 296**

59. Ms. Paris incorporates the preceding paragraphs by reference.

60. MSLO regarded Ms. Paris as suffering from a physical impairment that prevented the exercise of normal bodily functions.

61. Martha Stewart is a majority owner of the common stock of MSLO and is therefore subject to individual liability under the New York State Human Rights Law.

62. Defendants violated the New York State Human Rights Law when it terminated Ms. Paris's employment because it regarded her as disabled. N.Y. Exec. L. §§ 292(21)(c) and 296(1)(a).

63. Ms. Paris suffered damages as a result of Defendants' unlawful acts, including past and future lost wages and benefits, and past and future physical and emotional distress.

## SEVENTH COUNT

### Failure to Reasonably Accommodate in Violation of the
### New York City Human Rights Law
### N.Y. City Admin. Code § 8-107

64.     Ms. Paris incorporates the preceding paragraphs by reference.

65.     Ms. Paris's medical conditions as described in this Complaint constitute a disability within the meaning of the New York City Human Rights Law. N.Y.C. Admin. Code § 8-102(16).

66.     The New York City Human Rights Law requires employers to "make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job." N.Y.C. Admin. Code § 8-107(14)(a).

67.     MSLO violated the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107, by failing to accommodate Ms. Paris's known disability.

68.     Ms. Paris has suffered damages as a result of MSLO's unlawful acts, including past and future lost wages and benefits, past and future physical and emotional distress, and the costs of bringing this action.

## EIGHTH COUNT

### Discriminatory Termination Based on Disability in Violation of the
### New York City Human Rights Law
### N.Y. City Admin. Code § 8-107

69.     Ms. Paris incorporates the preceding paragraphs by reference.

70.     Ms. Paris's medical conditions as described in this Complaint constitute a disability within the meaning of the New York City Human Rights Law. N.Y.C. Admin. Code § 8-102(16).

71. The New York City Human Rights Law prohibits the discharge of an employee based on an employee's actual or perceived disability. N.Y.C. Admin. Code § 8-107.

72. MSLO violated the New York City Human Rights Law by terminating Ms. Paris because of her known disability or perceived disability. N.Y.C. Admin. Code § 8-107.

73. Ms. Paris has suffered damages as a result of MSLO's unlawful acts, including past and future lost wages and benefits, past and future physical and emotional distress, and the costs of bringing this action.

## NINTH COUNT

### Discriminatory Termination Based on Age in Violation of the Age Discrimination In Employment Act
### 29 U.S.C. 12201 *et seq.*

74. Ms. Paris incorporates the preceding paragraphs by reference.

75. Ms. Paris was fifty-two years old and qualified for her position when MSLO fired her.

76. Ms. Paris's job was given to Donna Lindskog, a MSLO salesperson who is at least twelve years younger than Ms. Paris, has less experience in sales than Ms. Paris and had been with the magazine for less than a year.

77. MSLO violated the ADEA when it discriminatorily terminated Ms. Paris's employment because of her age.

78. Ms. Paris suffered damages as a result of MSLO's unlawful acts, including past and future lost wages and benefits, past and future physical and emotional distress, and the costs of bringing this action.

79. MSLO willfully violated Ms. Paris's rights under the ADEA and, as a result, is liable for liquidated damages.

## TENTH COUNT

### Discriminatory Termination Based on Age in Violation of the
### New York State Human Rights Law
### N.Y. Exec. L. § 296

80. Ms. Paris incorporates the preceding paragraphs by reference.

81. Ms. Paris was fifty-two years old and qualified for her position when MSLO fired her.

82. Ms. Paris's job was given to Donna Lindskog, a MSLO salesperson who is at least twelve years younger than Ms. Paris, has less experience in sales than Ms. Paris and had been with the magazine for less than a year.

83. Martha Stewart is a majority owner of the common stock of MSLO and is therefore subject to individual liability under the New York State Human Rights Law.

84. Defendants violated the NYSHRL when they discriminatorily terminated Ms. Paris's employment because of her age.

85. Ms. Paris suffered damages as a result of Defendants' unlawful acts, including past and future lost wages and benefits, and past and future physical and emotional distress.

## ELEVENTH COUNT

### Discriminatory Termination Based on Age in Violation of the
### New York City Human Rights Law
### N.Y. City Admin. Code § 8-107

86. Ms. Paris incorporates the preceding paragraphs by reference.

87. Ms. Paris was fifty-two years old and qualified for her position when MSLO fired her.

88. Ms. Paris's job was given to Donna Lindskog, a MSLO salesperson who is at least twelve years younger than Ms. Paris, has less experience in sales than Ms. Paris and had been with the magazine for less than a year.

89. MSLO violated the NYCHRL when it discriminatorily terminated Ms. Paris's employment because of her age.

90. Ms. Paris suffered damages as a result of MSLO's unlawful acts, including past and future lost wages and benefits, past and future physical and emotional distress, and the costs of bringing this action.

## TWELFTH COUNT

### Interference with the Exercise of FMLA Rights in Violation of the Family and Medical Leave Act
### 29 U.S.C. §§ 2601 *et seq.*

91. Ms. Paris incorporates the preceding paragraphs by reference.

92. Ms. Paris put MSLO on notice that she qualified for FMLA leave when she notified MSLO that her injuries required hospitalization and that she was thereafter incapacitated and unable to perform the essential functions of her job.

93. MSLO interfered with Ms. Paris's right to take FMLA leave by requiring her to work while on FMLA leave, by pressuring her to get off FMLA leave and to return to work, and by subsequently terminating her shortly after she returned from FMLA leave.

94. Ms. Paris suffered damages as a result of MSLO's unlawful acts, including past and future lost wages and benefits and the costs of bringing this action.

95. MSLO willfully violated Ms. Paris's rights under the FMLA and, as as result, is liable for liquidated damages.

## THIRTEENTH COUNT

### Retaliation in Violation of the
### Family and Medical Leave Act
### 29 U.S.C. §§ 2601 *et seq.*

96. Ms. Paris incorporates the preceding paragraphs by reference.

97. Less than three weeks after Ms. Paris cut short her FMLA leave, MSLO terminated her with the purpose of retaliating against her for the exercise of her right to take leave under the FMLA.

98. Ms. Paris suffered damages as a result of MSLO's unlawful acts, including past and future lost wages and benefits and the costs of bringing this action.

99. MSLO willfully violated Ms. Paris's rights under the FMLA and, as as result, is liable for liquidated damages.

## FOURTEENTH COUNT

### Interference with Protected Rights in Violation of the
### Employee Retirement Income Security Act
### 29 U.S.C. § 1140

100. Ms. Paris incorporates the preceding paragraphs by reference.

101. MSLO terminated Ms. Paris for the purpose of interfering with the enjoyment of disability benefits to which she was entitled under MSLO's ERISA plan in violation of 29 U.S.C. § 1140.

102. Ms. Paris suffered damages as a result of MSLO's unlawful acts, including past and future lost pension benefits and the costs of bringing this action.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court:

1. Accept jurisdiction over this matter;

2. Order the Defendants to compensate the plaintiff for her past and future loss of wages and benefits, plus interest;

3. Enter judgment in favor of the plaintiff for such amount as may be awarded by a jury for compensatory damages for her physical and emotional suffering and loss of enjoyment of life;

4. Enter judgment in favor of the plaintiff for such amount as may be awarded by a jury for punitive damages;

5. Reinstate the plaintiff to a position comparable to her former position or, in lieu of reinstatement, award her front pay (including benefits);

6. Award to the plaintiff all costs and reasonable attorneys' fees incurred in connection with this action;

7. Grant such additional or alternative relief as may appear to this Court to be just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Dated: New York, New York
       October 6, 2009

Respectfully submitted,

OUTTEN & GOLDEN LLP

By: _____
    Tammy Marzigliano (TM 2934)

Gary Phelan (GP 0500)
Tammy Marzigliano (TM 2934)
Ossai Miazad (OM 1127)

Attorneys for the Plaintiff
3 Park Avenue
New York, NY 10016
(212) 245-1000
Fax: (212) 977-4005